# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 10 C 5021 |
| v. | ) ) |
| HARPERCOLLINS PUBLISHERS, INC., HARPERCOLLINS PUBLISHERS, LLC, RANDOM HOUSE, INC., and SIMON & SCHUSTER, INC., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants HarperCollins Publishers, Inc., HarperCollins Publishers LLC, Random House, Inc., and Simon & Schuster, Inc. move to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Based on the Court's review of the relevant factors, the Court, in its discretion, grants Defendants' motion to transfer.

## BACKGROUND

Plaintiff Illinois Computer Research, LLC ("ICR") is an Illinois limited liability company that was formed on July 30, 2007. (R. 1-1, Compl. ¶ 1; R. 29, Davis Decl., Ex. 2.) Its sole place of business is located at 1016 W. Jackson Boulevard, Chicago, Illinois. (*Id.*) Defendant HarperCollins Publishers, Inc. is a Delaware corporation having its principal place of business at 10 East 53rd Street, New York, New York. (*Id.* ¶ 2.) Defendant HarperCollins Publishers, LLC is a Delaware limited liability company having its principal place of business at 10 East 53rd Street, New York, New York. (*Id.* ¶ 3.) Defendant Random House, Inc. is a New York

corporation having its principal place of business at 1745 Broadway, New York, New York. (*Id.* ¶ 4.) Defendant Simon & Schuster, Inc. is a New York corporation having its principal place of business at 51 West 52nd Street, New York, New York. (*Id.* ¶ 5.)

In its Complaint, ICR alleges that Defendants infringed U.S. Patent No. 7,111,252 ("the '252 patent") entitled "Enhancing Touch and Feel on the Internet," that the United States Patent and Trademark Office ("PTO") issued on September 19, 2006. (*Id.* ¶¶ 8, 9.) ICR further alleges that the '252 patent relates to an apparatus and method for obtaining and reviewing excerpts from digital books for preview prior to purchase, but prevents the reader from obtaining and reviewing the entire book without purchasing it. (*Id.* ¶ 10.) In addition, ICR alleges that the HarperCollins Defendants have infringed the patent in suit in this judicial district and throughout the United States because its website reaches and instructs customers to buy and/or use HarperCollins' products and services in the manner specified in the asserted claims. (*Id.* ¶ 12.) ICR also alleges that Random House's and Simon & Schuster's infringing conduct occurred in this judicial district and throughout the United States because their websites reach and instruct customers to buy and use Random House and Simon & Schuster products and services. (*Id.* ¶¶ 15, 18.)

## LEGAL STANDARD

"Congress has codified the doctrine [of forum non conveniens] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 717-18 (7th Cir. 2002). More specifically, "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under Section 1404(a), the moving party bears the burden of establishing that (1) venue is proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and witnesses and is in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (citations omitted); *Jarmillo v. DineEquity, Inc.,* 664 F.Supp.2d 908, 913 (N.D. Ill. 2009). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey,* 796 F.2d at 219; *see also Methode Elec., Inc. v. Delphi Auto. Sys., LLC,* 639 F.Supp.2d 903, 907 (N.D. Ill. 2009) ("propriety of transfer is a case-by-case assessment").

Because the parties do not dispute that venue and jurisdiction are proper in both the Northern District of Illinois and the Southern District of New York, the Court turns to whether transfer will serve the convenience of the parties and witnesses and promote the interests of justice. In making this determination, the Court must look to both private and public interests. *See Nalco Co v. Environmental Mgmt., Inc.,* 694 F.Supp.2d 994, 998 (N.D. Ill. 2010); *Methode Elec.,* 639 F.Supp.2d 907. Private interests include: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience to the witnesses and parties. *See Nalco,* 694 F.Supp.2d at 998. Factors traditionally considered in the public interest analysis, also known as the "interest of justice" factors, include the congestions of the respective court dockets, prospects for a speedy trial, and the courts' familiarity with the applicable law. *See Coffey,* 796 F.2d at 221; *Jaramillo,* 664 F.Supp.2d at

915. District courts may make any necessary factual findings when determining venue issues. *See In re LimitNone, LLC,* 551 F.3d 572, 577 (7th Cir. 2008).

## ANALYSIS

I. **Private Interests – Convenience of the Parties and Witnesses**

   A. **Plaintiff's Choice of Forum and Location of Material Events**

Normally, a plaintiff's choice of forum is entitled to deference, but that deference is lessened if the forum does not have a significant relationship to the material events leading to the litigation. *See Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989); *Gueorguiev v. Max Rave, LLC,* 526 F.Supp.2d 853, 857 (N.D. Ill. 2007) (citing *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003)). In other words, courts give less deference to a plaintiff's choice of forum when another forum has a stronger relationship to the dispute. *See Jaramillo,* 664 F.Supp.2d at 914.

Here, ICR argues that the Northern District of Illinois is both its home forum and chosen forum, and thus this factor weighs against transfer to the Southern District of New York. ICR, however, does not point to any material events leading up to this litigation that occurred in the Northern District of Illinois except that the alleged infringing conduct occurred in this district and, indeed, throughout the United States via Defendants' websites. *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.,* 598 F.Supp.2d 836, 840 (N.D. Ill. 2009) (because alleged infringing conduct took place in numerous districts around the country, choice of forum not entitled to much weight). On the other hand, Defendants maintain that the relevant events leading up to this patent lawsuit occurred in the Southern District of New York, and therefore, the Court should not give ICR deference to its chosen forum. The Court agrees.

4

Defendants' principal places of business are all in New York, New York.  In addition, Defendants have provided affidavits that the individuals involved in developing Defendants' websites are based in New York, the design of the websites – that include the accused features – occurred in New York, and that Defendants do not have servers located in the Northern District of Illinois relating to the accused functionality on their websites.  Indeed, because "[p]atent-infringement suits typically revolve around the alleged infringer's activities, employees, and documents,"[1] *see Methode Elec.*, 639 F.Supp.2d at 910, the Southern District of New York has a significant relationship to the material events.  *See MPH Tech. OY v. Zyxel Comm'cn Corp.,* No. 10 C 684, 2010 WL 2836734, at *2 (N.D. Ill. July 16, 2010) ("activities and business of the alleged infringer are the operative facts for a patent infringement case"); *Cooper Bauck Corp. v. Dolby Lab., Inc.,* No. 05 C 7063, 2006 WL 1735282, at *5 (N.D. Ill. June 19, 2006) ("location of the infringer's principal place of business is often the critical and controlling consideration" because patent lawsuits "often focus on the activities of the alleged infringer, its employees, and its documents") (citation omitted).  Because ICR's chosen forum has a weak connection to material events of their infringement claim, this factor is neutral and the location of the relevant events factor strongly weighs in favor of transferring venue to the Southern District of New York.

B.     **Relative Ease of Access to Sources of Proof**

In their motion to transfer venue, Defendants maintain that the sources of proof related to the alleged infringement and potential damages mainly consist of documents, data records, and

---

[1] ICR does not have any employees and its sole officer and director is James Parker, who resides in Florida. (R. 29, Davis Decl., Ex. 1, Interrog. Resp. No. 15.)

source codes that are in maintained in either New York or New Jersey. ICR, however, asserts that the documents relating to its business and prior lawsuits are located in Chicago. Because "transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town," the access to sources of proof factor is neutral. *See Rabbit Tanaka Corp.,* 598 F.Supp.2d at 840.

C.   **Convenience to the Witnesses**

The next factor, convenience of the witnesses, is often considered the most important factor in the transfer analysis. *See Schwartz v. National Van Lines, Inc.,* 317 F.Supp.2d 829, 836 (N.D. Ill. 2004). "To determine the convenience to the witnesses, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Id.* In addition, the convenience of non-party witnesses is more significant than party witnesses because party witnesses normally appear voluntarily. *See Nalco Co.,* 694 F.Supp.2d at 999; *Amorose v. C.H. Robinson Worldwide, Inc.,* 521 F.Supp.2d 731, 736 (N.D. Ill. 2007).

Here, ICR argues that its witnesses include the president of Harpo Productions, Inc. ("Harpo"), Erik Logan, and Harpo's general counsel, both of whom are located in Chicago, because of ICR's prior lawsuit against Harpo in this district, 08 C 7322. ICR maintains that Logan's testimony is relevant to damages, yet Harpo settled with ICR in the 08 C 7322 matter. (*See* 08 C 7322, R. 154, 155.) Meanwhile, ICR points to the inventor and prosecutor of the '252 patent, Scott Harris, who is located in San Diego, California, as a potential witness. Harris assigned his rights relating to the '252 patent to ICR shortly after ICR was formed in 2007. ICR also lists James Parker, the sole officer and director of ICR, who is located in Delray Beach, Florida, as a potential witness in this matter. Parker, as the sole director and officer of ICR, is a

6

party witness, and thus his convenience is not as significant as the non-party witnesses' convenience. *See Nalco Co.,* 694 F.Supp.2d at 999; *Amorose,* 521 F.Supp.2d at 736.

Meanwhile, Defendants have identified three non-party witnesses who were involved in the development of the HarperCollins website, but who are no longer employed by HarperCollins. These witnesses include software engineers Chris Andreotti, Sean Unruh, and Ed Dulinksy, who was the manger of the project. (R. 30, Rothstein Decl. ¶¶ 2, 3.) Defendants also identify Rachel Cho, who worked in HarperCollins' business development department and who no longer works for HarperCollins. (*Id.* ¶ 4.) These four witnesses all live and work in New York. (*Id.* ¶¶ 2, 3, 4.)

In addition, Defendants set forth the declaration of Christopher Hart, Vice President for Applications at Random House, in which he avers that the features on its website involved in this patent litigation were designed and developed with Adobe – an independent contractor. (R. 31, Hart Decl. ¶¶ 1, 2, 3.) Hart also avers that one of Defendants' potential witnesses is Jerry Knight, who served as the Adobe "User Experience Leader" on the project, and that Knight lives in New York, although he is no longer employed by Adobe. (*Id.* ¶¶ 3, 4.)

Simon & Schuster's website was also developed in New York. Defendants present the declaration of Ken Judy, Simon & Schuster's Vice President of Technical Engineering, in support of their argument that other non-party witnesses are located in New York. In particular, the website features involved in this patent dispute were developed with two outside companies, LibreDigital and ThoughtWorks, Inc., which have employees in New York and Texas. (R. 32, Judy Decl. ¶¶ 1, 3.) In particular, Judy avers that Michael Shubert, an employee of ThoughtWorks, was involved in the development of the disputed functionality at

7

SimonandSchuster.com and that although Shubert no longer works at ThoughtWorks, he is still located in New York. (*Id.* ¶ 4.) Judy also avers that another ThoughtWorks employee also involved in the project, Maneesh Subherwal, is still working at the New York office of ThoughtWorks. (*Id.* ¶ 5.)

Moreover, Defendants have identified a non-party witness located in New York relating to the BarnesandNoble.com prior art that was part of the other lawsuits concerning the '252 patent. (Davis Decl., Ex. 5, Black Decl.) Specifically, Roger Black worked with Barnes & Noble in designing its website in 1996. (*Id.* ¶¶ 2, 5.) Black avers that at the time the Barnes & Noble website launched, it provided a functionality that enabled users to search for and review information about available books similar to the one disputed in this lawsuit. (*Id.* ¶¶ 6, 7, 8, 9.) Black further avers that the functionality that was available at BarnesandNoble.com became available to the public in May 1997. (*Id.* ¶ 9.)

Considering the materiality of the prospective non-party witnesses' testimony, Defendants have established that the convenience of witnesses factor strongly weighs in favor of transferring the matter to the Southern District of New York. *See Schwartz,* 317 F.Supp.3d at 836; *Spherion Corp. v. Cincinnati Fin. Corp.,* 183 F.Supp.2d 1052, 1059 (N.D. Ill. 2002). Specifically, Defendants present evidence that non-party witnesses who were involved in the development of the alleged infringing websites and a prior art witness are located in New York. On the other hand, ICR's potential witness, Harpo's President Erik Scott, might have relevant damages testimony and is located in this judicial district. Meanwhile, the prosecutor and inventor of the '252 patent and ICR's sole officer and director are not located in this district. As such, the convenience of witnesses factor strongly weighs in favor of transfer. *See In re*

8

*National Presto Indus.,* 347 F.3d at 664.

### D. Convenience of Parties

Assessing the convenience of the parties requires consideration of the parties' residences and abilities to bear the expense of litigating in a particular forum. *See Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.,* 42 F.Supp.2d 821, 834 (N.D. Ill. 1999); *Von Holdt v. Husky Injection Molding Sys.,* 887 F.Supp. 185, 188 (N.D. Ill. 1995). The convenience of counsel, however, is not a factor that courts consider in the Section 1404(a) transfer analysis. *See Nobbe ex rel. Bayles v. General Motors Corp.,* No. 08 C 4631, 2009 WL 1515269, at *3 (N.D. Ill. May 27, 2009) (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir. 1955)).

Defendants argue that the Southern District of New York is more convenient for them because the sources of proof related to the alleged infringement and potential damages consisting of documents, data records, and source codes that are in maintained in either New York or New Jersey, as well as the majority of non-party witnesses. ICR also argues that this district is more convenient for it based on the location of its sources of proof, yet admits that its sole officer and director, James Parker, is located in Florida and that the inventor and prosecuting attorney, Scott Harris, is located in California. Further, ICR argues that because of its financial size – which it does not substantiate with any evidence – it would be inconvenienced by litigating this case in New York. Despite ICR's arguments to the contrary and based on the fact that ICR has no employees and one officer and director who does not reside in Illinois, the convenience of the parties' factor weighs in favor of transfer to the Southern District of New York.

### II. Public Interests – Interest of Justice

9

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (internal citations omitted); *see also Heller Fin.,* 883 F.2d at 1293. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," such as likelihood of a speedy trial, feasibility of consolidation, and in a diversity case, familiarity of judges with applicable law. *See Coffey*, 796 F.2d at 220; *see also Heller Fin.,* 883 F.2d at 1294.

### A. Congestion of Court Dockets

According to the Federal Court Management Statistics for the twelve month period ending in September 2009, the total average civil case filings per judge in the Northern District of Illinois was 378. In the Southern District of New York, the total average civil case filings per judge in 2009 was 428. Based on these statistics, the Northern District of Illinois is less congested than the Southern District of New York.

### B. Likelihood of Speedy Trial

"Two statistics bear significant relevance when analyzing the likelihood of a speedy trial." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F.Supp.2d 829, 837 (N.D. Ill. 2004). "The first is the median number of months from filing to disposition, and the second is the median number of months from filing to trial." *Id.* In support of the speedy trial factor, Defendants have provided statistics from LegalMetric reports concerning patent cases in the Northern District of Illinois. (Davis Decl., Ex. 7, LegalMetric District Judge Report, NDIL.) The average time from case filing to termination of patent cases in this district is 11.6 months and the average time to termination on the merits is 15.0 months. (*Id*. at 3.) In the Southern District of New York, the

average time for case filing to termination is 12.9 months and the average time from filing until termination on the merits is 20.4 months. (*Id.*, Ex. 7, LegalMetric District Judge Report, SDNY). Moreover, according to Federal Court Management Statistics of 2009, the median months from filing to disposition in civil matters in the Southern District of New York for the twelve month period ending September 2009 is 6.4 months and from filing to trial is 31.4 months. (*See* www.uscourts.gov/Statistics/FederalCourtManagementStatistics; *see also* R. 37, Opp. Brief, Ex. 1.) In the Northern District of Illinois, the median number of months from filing to disposition in civil cases was 6.2 and from filing to trial is 27.8. (*Id.*)

Despite these slight differences, ICR argues that because the Northern District of Illinois has adopted local patent rules, this factor weighs against transfer to the Southern District of New York. ICR has not provided any statistics or evidence that the Northern District of Illinois Local Patent Rules, which were adopted in October 2009, have had any such effect. *See Spread Spectrum Screening, LLC v. Eastman Kodak Co.,* No. 10 C 1101, 2010 WL 3516106, at *6 (N.D. Ill. Sept. 1, 2010) (local patent rules do not favor granting or denying transfer); *Newegg, Inc. v. Telecomm. Sys.,* No. C 09-0982, 2009 WL 1814461, at *9 (N.D. Cal. 2009) (same). In any event, based on the small statistical differences between the Southern District of New York and the Northern District of Illinois, the "likelihood of a speedy trial factor" slightly weighs against transfer. *See, e.g., First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.,* No. 04 C 2728, 2004 WL 1921059, at *5 (N.D. Ill. July 21, 2004).

### C. Familiarity with Applicable Law

Because "relative familiarity with the applicable law is not an issue in a patent infringement case, as the applicable law is the same nationwide," this factor is neutral. *See*

11

*Rabbit Tanaka Corp.,* 598 F.Supp.2d at 841.

### III. Balancing the Factors

Defendants have met their burden of establishing that the Southern District of New York is clearly more convenient. Specifically, the Southern District of New York is the location of the majority of material events and evidence in this patent lawsuit. Moreover, Defendants have established that the convenience of the witnesses strongly favors transfer and the convenience of the parties also favors transfer. In addition, while all Defendants are located in New York, ICR's sole director and officer is located in Florida, although its principal place of business is in Chicago. ICR, however, has no employees anywhere. Despite the fact that the Northern District of Illinois is slightly less congested than the Southern District of New York and weighing all of the relevant factors, Defendants have met their burden in establishing that these factors strongly weigh in favor of transfer to the Southern District of New York. *See In re National Presto Indus.,* 347 F.3d at 664.

### CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to transfer venue to the Southern District of New York.

**Date:** November 22, 2010

                                **ENTERED**

                                **AMY J. ST. EVE**
                                **United States District Court Judge**